THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY CLEMENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIV. ACTION NO. 17-004100-JPC |
| v. | ) |
| | ) **Electronically Filed** |
| MOODY'S ANALYTICS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT MOODY'S ANALYTICS, INC.'S
MEMORANDUM OF LAW IN
<u>SUPPORT OF THE COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION</u>**

MORGAN, LEWIS & BOCKIUS LLP
Kenneth J. Turnbull
Jason D. Burns
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT PROCEDURAL HISTORY .............................................................................. 2

ARGUMENT .............................................................................................................................. 3

I.     LEGAL STANDARD ...................................................................................................... 3

II.    THE COURT PROPERLY EXERCISED SUPPLEMENTAL JURISDICTION OVER CLEMENS' NYLL AND BREACH OF CONTRACT CLAIMS. ....................... 5

       A.    Declining Supplemental Jurisdiction Would Not Promote Economy, Convenience, Fairness Or Comity – *Exercising* Supplemental Jurisdiction Would. ................................................................................................................... 5

            1.    Principles of Economy, Convenience, and Fairness Weigh in Favor of Supplemental Jurisdiction. ................................................................... 5

            2.    Comity Weighs in Favor of Supplemental Jurisdiction. ............................ 7

                 i.    Clemens' run-of-the mill state-law claims are not novel. ............. 7

                 ii.   Clemens' state-law claims are barred because this Court and the Second Circuit have already held that Moody's properly exercised its right to reduce Clemens' incentive compensation. ................................................................................ 10

       B.    Declining Supplemental Jurisdiction Would Undermine All Of The Values Articulated By The Second Circuit in *Catzin*. ................................................... 12

III.   CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ackerman v. Nat'l Prop. Analysts, Inc.*,
   887 F. Supp. 494 (S.D.N.Y. 1992) ...................................................................................7

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
   140 F.3d 101 (2d Cir. 1998)..............................................................................................7

*Barker v. NYNEX Corp.*,
   760 N.Y.S.2d 138 (1st Dep't 2003) ..................................................................................9

*Catzin v. Thank You & Good Luck Corp.*,
   899 F.3d 77 (2d Cir. 2018)......................................................................................1, 4, 12

*Chimarev v. TD Waterhouse Inv'r Servs., Inc.*,
   280 F. Supp. 2d 208 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 259 (2d Cir. 2004).................6, 7

*Clemens v. Moody's Analytics, Inc.*,
   No. 18-1283 (2d Cir. 2018)..................................................................................9, 10, 11

*Clerge v. Consol. Edison*,
   Nos. 95 CIV 9072(MBM), 97 CIV 8554(MBM), 1999 WL 239688 (S.D.N.Y.
   Apr. 23, 1999).................................................................................................................6, 7

*Fleming v. MaxMara USA, Inc.*,
   644 F. Supp. 2d 247 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115 (2d Cir. 2010)...................12

*Foss v. Am. Tel. & Tel. Co.*,
   605 N.Y.S.2d 143 (3d Dep't 1993) ....................................................................................9

*Gunn v. Ambac Assur. Corp.*,
   No. 11 Civ. 5497(PAC)(JLC), 2012 WL 3188849 (S.D.N.Y. Aug. 6, 2012) ..................12

*Kavitz v. Int'l Bus. Machs. Corp.*,
   No. 09 Civ. 5710 (CM), 2010 WL 11507447 (S.D.N.Y. Aug. 27, 2010), *aff'd*,
   458 F. App'x 18 (2d Cir. 2012) .........................................................................................8

*Kroshnyi v. U.S. Pack Courier Servs., Inc.*,
   771 F.3d 93 (2d Cir. 2014)..............................................................................................3, 6

*Matter of Dean Witter Reynolds, Inc. v. Ross*,
   75 A.D.2d 373 (1st Dep't 1980) .......................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

*O'Grady v. BlueCrest Capital Mgt. LLP*,
   111 F. Supp. 3d 494, 502 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016) ............................................................................................................................8

*Raucci v. Town of Rotterdam*,
   902 F.2d 1050 (2d Cir. 1990) ............................................................................................6, 9

*Tischmann v. ITT/Sheraton Corp.*,
   882 F. Supp. 1358 (S.D.N.Y. 1995) ....................................................................................8

*Truelove v. Ne. Capital & Advisory, Inc.*,
   95 N.Y.2d 220 (2000) .........................................................................................................8

**STATUTES**

28 USC § 1367(a) ...........................................................................................................................4

28 USC § 1367(c) .......................................................................................................................4, 5

Family and Medical Leave Act ("FMLA"), 29 USC § 2601, *et seq*. .................................... passim

New York Labor Law ("NYLL") ............................................................................................ passim

**PRELIMINARY STATEMENT**

Plaintiff Gregory Clemens ("Clemens") chose this forum when he filed his Complaint over two years ago. By making that deliberate choice, Clemens asked this Court to resolve his alleged claims against Moody's Analytics, Inc. ("Moody's") under the Family and Medical Leave Act ("FMLA"), the New York Labor Law ("NYLL"), and for breach of contract. Following extensive discovery—which included eight depositions, discovery motions, and the production of approximately 5,000 pages of documents and electronically stored information ("ESI")—the Court did just that. On April 9, 2018, the Court granted Moody's motion for summary judgment and dismissed Clemens' Complaint in its entirety. After full briefing and oral argument, the Second Circuit affirmed the dismissal of Clemens' FMLA claim, but remanded Clemens' NYLL and contract claims solely for this Court to determine whether it properly exercised supplemental jurisdiction over those state-law claims.

The Second Circuit has previously acknowledged that a party's opportunity to be heard on whether a district court should exercise supplemental jurisdiction "may be inherent in the course of pre-trial proceedings such as those resolving motions to dismiss or for summary judgment. In such situations, a district court need not provide a separate opportunity to be heard beyond the briefing and resolution of such motions." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 84 (2d Cir. 2018). Here, Clemens has already had an opportunity to be heard. The parties' briefs submitted on summary judgment and to the Second Circuit extensively addressed the overarching issue of Clemens' incentive compensation and the terms of the relevant compensation plan underpinning his NYLL and breach of contract claims. In multiple rounds of briefing, the parties specifically analyzed Clemens' state-law claims in light of the fully-developed record. At no point before either the District Court or the Second Circuit did Clemens raise the issue of supplemental jurisdiction or argue that his state claims should be sent to state

court.  Despite the fact that Clemens has now been granted a second bite at the apple, the result is the same:  all of the factors identified by the Second Circuit to assess the proper exercise of supplemental jurisdiction—judicial economy, convenience, fairness and comity—weigh decidedly in favor of the Court's exercise of that discretion here.  Clemens' FMLA, NYLL, and contract claims all hinge on the theory that Moody's improperly reduced his discretionary incentive compensation because he requested, and was granted, two medical leaves in 2015.  This Court and the Second Circuit have already decided that issue in Moody's favor.  Because Clemens' NYLL and contract claims are predicated upon the same factual allegations as his FMLA claim, it would be impossible for Clemens to prevail in a new state-court action without treading on the judgments of this Court and the Second Circuit.  To now send the parties back to square one in state court to re-litigate these same issues that have been vigorously litigated and briefed for three years, and to force the parties to incur the fees, costs, burdens and distractions of doing so for a second time, serves neither economy, convenience, comity, nor fairness.

Clemens should not be permitted to use the Second Circuit's procedural mandate as a lifeline to re-litigate the merits of claims and issues long-since decided.  The Court properly exercised supplemental jurisdiction over Clemens' NYLL and breach of contract claims and those claims should dismissed with prejudice.

## RELEVANT PROCEDURAL HISTORY

Clemens filed this action on January 19, 2017, alleging, *inter alia*, causes of actions under the FMLA, the NYLL, and for breach of contract.  *See generally* Dkt. No. 1 ("Compl.").  The upshot of Clemens' Complaint is that Moody's improperly reduced his incentive compensation under his 2015 incentive compensation plan (the "Plan"), and later terminated Clemens' employment, because he took FMLA leave.  *Id.*  Clemens' NYLL and breach of contract claims are grounded in the same alleged facts, and based on the same

theory, as his FMLA claim. *Id.*, ¶¶ 35-51. Clemens alleges, for example, that Moody's violated the NYLL as a result of (i) the decision by his supervisor, David Little, "to arbitrarily strip 20" contribution units claimed by Clemens and (ii) the "lump-sum reduction [*i.e.*, proration] of Clemens' commissions because of his approved FMLA leave," pursuant to Moody's policy. *Id.*, ¶¶ 37-38. *See also id.* ¶ 39 ("Had [Moody's] performed the commission calculation using all 164 contribution units Clemens has earned, and without any reduction because of the approved FMLA leave he had taken, Clemens would have been entitled to 2015 commissions of at least $201,807."). Clemens' breach of contract claim is based on the same alleged facts as his FMLA and NYLL claims. *Id.*, ¶¶ 42-43.

The Court rejected Clemens' theory and granted summary judgment to Moody's on each of Clemens' claims. *See* Dkt. No. 43 (the "Decision and Order"), at 13. The Court held that the undisputed facts show that Moody's reduced Clemens' incentive compensation and terminated his employment because, as confirmed by an investigation initiated by Moody's Human Resources Department and conducted by its Compliance Department, Clemens claimed contribution units for projects and client meetings that could not be substantiated, and claimed multiple sets of contribution units for the same internal projects. *Id.* The Second Circuit affirmed the dismissal of Clemens' FMLA claim, for substantially the same reasons as this Court. The Panel held that "the District Court correctly determined that Clemens failed to produce evidence that could lead a reasonable factfinder to find that Moody's acted with retaliatory animus, and not for its stated reasons." Dkt. No. 49 at 4-5.

## ARGUMENT

I. **LEGAL STANDARD**

The decision to exercise supplemental jurisdiction is left to the sound discretion of this Court. *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) ("We review

3

a district court's exercise of supplemental jurisdiction over state-law claims for abuse of discretion."). Throughout the litigation of this lawsuit, this Court had supplemental jurisdiction over Clemens' state-law claims because they "are so related to claims in the action within" the Court's "original jurisdiction that they form part of the same case or controversy[.]" 28 USC § 1367(a). Clemens does not dispute that his NYLL and breach of contract claims meet this standard. The sole issue raised by the Second Circuit on its remand order is whether this Court properly exercised its discretion to retain that jurisdiction and to consider the parties' summary judgment briefing on Clemens' related state-law claims once the Court dismissed his FMLA claim.

Section 1367(c) provides an exception to the mandatory exercise of supplemental jurisdiction over a related state-law claim where: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Catzin*, 899 F.3d at 85 (quoting 28 USC § 1367(c)). If one of the four prongs of Section 1367(c) is met, the district courts must evaluate whether declining to exercise supplemental jurisdiction would promote judicial economy, convenience, fairness, and comity. *Id.*

The Court's decision to exercise supplemental jurisdiction and dismiss Clemens' state-law claims at the same time it dismissed his FMLA claims promoted each of these values and furthered "the federal courts' paramount role of being a forum where disputes are efficiently and fairly resolved." *Catzin*, 899 F.3d at 86. The alternative of declining jurisdiction and allowing

Clemens to re-litigate those claims from scratch in state court would, in contrast, severely undermine each of those values.

## II. THE COURT PROPERLY EXERCISED SUPPLEMENTAL JURISDICTION OVER CLEMENS' NYLL AND BREACH OF CONTRACT CLAIMS.

### A. Declining Supplemental Jurisdiction Would Not Promote Economy, Convenience, Fairness Or Comity – *Exercising* Supplemental Jurisdiction Would.

Because the Court dismissed Clemens' federal claim under the FMLA, there is no dispute that Section 1367(c) applies. At the parties' June 10, 2019 conference, Clemens' counsel suggested that Clemens may also argue that Section 1367(c) applies because his NYLL and breach of contract claims raise "novel" issues of state law. Yet, Clemens never previously raised that misguided argument to this Court or the Second Circuit, and instead all along treated his state-law claims for what they are: straightforward causes of action that are resolved by well-settled law. Even if the Court were to find some element of novelty here, it should continue to exercise supplemental jurisdiction because neither economy, convenience, fairness, nor comity compel this Court to decline supplemental jurisdictions. Each of those factors *supports* the Court's decision to dismiss Clemens' state-law claims on summary judgement.

#### 1. Principles of Economy, Convenience, and Fairness Weigh in Favor of Supplemental Jurisdiction.

Declining to exercise supplemental jurisdiction at this post-summary judgment, post-appeal stage of the proceedings is the *least* economical, convenient, and fair course of action. The Court dismissed Clemens' Complaint only *after* the parties engaged in extensive discovery of the facts relevant to Clemens' NYLL and breach of contract claims, engaged in discovery motion practice, and fully briefed those claims on summary judgment (and before the Second Circuit). Dkt. No. 23 at 24-25, Dkt. No. 35 at 21-24, Dkt. No. 38 at 9-10. That discovery included the production "of approximately 5,000 pages of documents, including extensive ESI

5

discovery." Dkt. No. 16.  Clemens additionally deposed seven current and former Moody's employees, including Ying Tang, the Senior Director of Sales Analytics at Moody's and the individual responsible for administering the Plan.  Dkt. Nos. 24, 40.  In addition to Tang, Clemens questioned multiple Moody's witnesses about the Plan.  *See* Decision and Order, at 13.  No witness, however, backed-up Clemens' claim that he could claim multiple contribution units for the same task:

> Plaintiff's theory that Little intentionally lied to the investigators about the proper interpretation of the 2015 Plan fails to explain the undisputed fact that Krayn independently flagged Plaintiff's Saleforce entries as suspicious, suggesting that she shared Little's interpretation even before the compliance investigation. *See* Pl.'s 56.1 ¶ 38.  In fact, no witness besides Plaintiff has testified in support of Plaintiff's interpretation.  *Id.* ¶ 13.

*Id*.

Under these circumstances, "'denial of [supplemental] jurisdiction . . . would be a waste of judicial resources, given the extensive proceedings involving the [state] claims prior to the dismissal of the federal claim[s],' and . . . would unnecessarily delay the resolution of this case." *Clerge v. Consol. Edison*, Nos. 95 CIV 9072(MBM), 97 CIV 8554(MBM), 1999 WL 239688, at *6 (S.D.N.Y. Apr. 23, 1999) (citations omitted).  Courts consistently have held that the exercise of supplemental jurisdiction is proper under circumstances, like here, where the parties have conducted discovery and briefed the state-law claims. *Kroshnyi*, 771 F.3d at 102 (affirming exercise of supplemental jurisdiction where parties completed discovery and district court decided state-law claims on summary judgment); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (affirming district court's exercise of supplemental jurisdiction "given the extensive proceedings involving the pendent claims prior to the dismissal of the federal claim"); *Chimarev v. TD Waterhouse Inv'r Servs., Inc.*, 280 F. Supp. 2d 208, 226 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 259 (2d Cir. 2004) (retaining

6

supplemental jurisdiction over state-law claims where "discovery long ago concluded and motions have been made with respect to all of plaintiff's claims"); *Clerge*, 1999 WL 239688, at *6 (in employment action, exercising supplemental jurisdiction to dismiss state-law claims on summary judgment).

The Second Circuit has, in fact, affirmed the exercise of supplemental jurisdiction in cases far *less* further along than this one, even where the state law claims are the only claims remaining. *See, e.g.*, *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir. 1998) (affirming exercise of supplemental jurisdiction where, at the time the federal claims were resolved, the parties had engaged in some discovery and held a settlement conference before the magistrate); *Ackerman v. Nat'l Prop. Analysts, Inc.*, 887 F. Supp. 494, 510 (S.D.N.Y. 1992) (retaining state claims after 12(b)(6) dismissal of federal claims).

## 2. Comity Weighs in Favor of Supplemental Jurisdiction.

### i. Clemens' run-of-the mill state-law claims are not novel.

Leaving the Court's summary judgment decision intact "would not breach the comity owed to the courts of New York as the disposition of [Clemens' state] claims is clear and merits little discussion." *Chimarev*, 280 F. Supp. 2d at 226. Moreover, these is no pending state-law action between the parties, let alone an action that would be impacted by this Court's continuing exercise of jurisdiction.

While Clemens may argue that his state-law claims are "novel," he appears to confuse novelty with the absence of authority supporting those claims. Neither Clemens' NYLL claim nor his claim for breach of contract broke any new legal ground or required this Court to wade into the thicket of complex state-law issues. As this Court previously held, the straightforward language of the Plan easily resolved both claims. *See* Decision and Order, at 15-18. As to Clemens' NYLL claim, New York courts have long held that the term "wages" as used in the

7

NYLL "does not encompass an incentive compensation plan." *Matter of Dean Witter Reynolds, Inc. v. Ross,* 75 A.D.2d 373, 381 (1st Dep't 1980).  Moreover, the New York Court of Appeals confirmed nearly two decades ago that the NYLL's definition of "wages" "excludes incentive compensation 'based on factors falling outside the scope of the employee's actual work.'" *Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000) (quoting *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1370 (S.D.N.Y. 1995)).  Here, there is no dispute that Clemens' eligibility for incentive compensation included a team component, based on the overall performance of Moody's Stress Testing Team, that was unrelated to Clemens' individual work.  *See* Decision and Order, at 13-14.  The Court properly relied on these well-established principles to grant summary judgment on Clemens' NYLL claim.  *Id.*

There is nothing novel about Clemens' duplicative breach of contract claim.  Under New York law, the Plan does not contain a contractual right to receive any particular payout because Moody's had the discretion whether or not to award incentive compensation.  *See, e.g.*, *Kavitz v. Int'l Bus. Machs. Corp.*, No. 09 Civ. 5710 (CM)(RLE), 2010 WL 11507447, at *7 (S.D.N.Y. Aug. 27, 2010), *aff'd*, 458 F. App'x 18 (2d Cir. 2012) (employee could not establish that IBM's decision to recalculate his commission constituted breach of incentive compensation plan where plan gave IBM "sole discretion . . . to adjust or even eliminate Plaintiff's commission"); *O'Grady v. BlueCrest Capital Mgt. LLP*, 111 F. Supp. 3d 494, 502 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016) (dismissing breach of contract claim where plan language provided that both the bonus program and any awards under it were subject to employer's "sole and absolute" discretion).  The fact that Moody's reserved the *right* to eliminate the Plan in all circumstances precludes Clemens' breach of contract claim for the fundamental reason that no binding contract existed between the parties.  *Kavitz*, 458 F. App'x 18, 20 (2d Cir. 2012)

(Summary Order) (notwithstanding language limiting IBM's right to amend plan if "incentive payments have been earned under its terms," the fact "that IBM retained unfettered discretion . . . to adjust its terms or even to cancel the [p]lan entirely confirm[ed]" that plan was "not an enforceable contract"). These are not novel points of law. They are well-established principles long followed by state and federal courts in New York. *See, e.g.*, *Foss v. Am. Tel. & Tel. Co.*, 605 N.Y.S.2d 143, 144 (3d Dep't 1993) (holding that incentive compensation plan did not "confer[ ] upon [plaintiff] any right to receive" a specific commission amount because the plan contained a "disclaimer explicitly reserv[ing] to [the employer] the right to 'reduce, modify, or withhold compensation . . . based on management determination of special circumstances at any time for any reason with or without prior notice'"); *Barker v. NYNEX Corp.*, 760 N.Y.S.2d 138, 139-40 (1st Dep't 2003) (incentive plan did not constitute contract for payment of any particular sum where plan reserved employer's "right to reduce, modify, or withhold incentive payments at any time based on changed business conditions, individual performance or management modification").

The Court also properly held that, even if the Plan was an enforceable contract, Clemens' contract claim cannot prevail because Moody's did not breach the Plan's terms. Decision and Order, at 16. Clemens does not dispute that Moody's had the right to review and reduce his contribution units. *Clemens v. Moody's Analytics, Inc.*, No. 18-1283 (2d Cir. 2018) ("*Clemens* Appeal"), Dkt. No. 32, at 52. Instead, Clemens argues that Little reduced his units in bad-faith because Clemens took FMLA leave. *Id.* Clemens' twice-rejected theory means that he stands at odds with decisions of this Court and the Second Circuit, but that does not make his contract claim novel. *See Raucci*, 902 F.2d at 1055 (affirming exercise of supplemental jurisdiction where the "case merely applie[d] recently settled New York [] doctrine and [did] not involve

9

novel legal questions" and where the court "was familiar with the state law issues from the summary judgment motions").

>  ii.   *Clemens' state-law claims are barred because this Court and the Second Circuit have already held that Moody's properly exercised its right to reduce Clemens' incentive compensation.*

The comity owed by state courts to federal courts also supports the exercise of supplemental jurisdiction. Clemens' NYLL and breach of contract claims are inherently intertwined with his FMLA claim. In truth, the decisions by this Court and the Second Circuit dismissing Clemens' FMLA claim foreclose him from re-litigating his overlapping state-law claims.

In dismissing Clemens' claim that Moody's improperly prorated his incentive compensation based on the length of his FMLA leave, the Court held that:

> It is undisputed that Plaintiff's incentive compensation was based on both his own personal production and the production of the Stress Testing Team overall, and that Plaintiff did not contribute to the Stress Testing Team's production during his leaves . . . Hence, Defendant did not violate the FMLA by prorating Plaintiff's incentive compensation to account for this lost production.

Decision and Order, at 13. This finding—that Clemens' incentive compensation is based on factors outside of his actual work—is also fatal to Clemens' NYLL claim under controlling New York law. *See id.* at 17-18.

Clemens' breach of contract claim likewise turns on the same theory dismissed by this Court and the Second Circuit: that Little improperly reduced Clemens' contribution units because he took FMLA leave. *See* Compl. ¶¶ 42-43; *Clemens* Appeal, Dkt. No. 32, at 52. Clemens' own arguments to the Second Circuit make this point. Clemens alleged that the Plan "created a vested contractual right for Clemens to be paid the amount of compensation he had earned" in 2015, but that "Little improperly reduced Clemens' incentive compensation" by "removing 20 contribution units he had properly earned thereby reducing Clemens'

10

compensation in violation of his rights under the plan." *Clemens* Appeal, Dkt. No. 32, at 52. Clemens does not dispute that Little had the right "to review the units claimed by [Clemens] for accuracy," but contends there is a "genuine issue of fact as to whether the allegations made by Little relating to Clemens' recorded units were baseless and made in bad faith" and whether "the conclusions of the compliance report were flawed because they were based on Little's lies." *Id.* at 52-53.

This Court and the Second Circuit both have considered, and rejected, those very arguments. In its summary judgment decision, the Court held that the undisputed facts show that Moody's:

> reduced Plaintiff's compensation and terminated his employment because Plaintiff falsely claimed credit for specific work activities to inflate his incentive compensation. An investigation initiated by its Human Resources Department and conducted by its Compliance Department confirmed that Plaintiff claimed contribution units for projects and client meetings that could not be substantiated, and he claimed multiple sets of contribution units for the same internal projects.

Decision and Order, at 13. The Court specifically found Clemens' attempts to "trash the integrity of the compliance investigation" are without merit, and concluded that the undisputed evidence did not support Clemens' theory that Little "'repeatedly lied to the investigators in order to orchestrate an outcome to the investigation that supported his improper removal of [Plaintiff's] units,' and then . . . used the outcome as a pretext to terminate Plaintiff 'in order to cover up his initial unlawful retaliation.'" *Id.* at 11. The Second Circuit affirmed that decision, holding that "the District Court correctly determined that Clemens failed to produce evidence that could lead a reasonable factfinder to find that Moody's acted with retaliatory animus, and not for its stated reasons." Dkt. No. 49 at 4-5.

Because this Court and the Second Circuit conclusively resolved the factual predicates underpinning each of Clemens' claims, Clemens cannot re-litigate those issues, under any cause

11

of action. *See, e,g.*, *Gunn v. Ambac Assur. Corp.*, No. 11 Civ. 5497(PAC)(JLC), 2012 WL 3188849, at *4 (S.D.N.Y. Aug. 6, 2012) (Crotty, J.) (finding claims barred by collateral estoppel where underlying issues were raised in prior state court actions, state courts adjudicated those issues on the merits, and plaintiff was a party to the state court actions and had full and fair opportunity to litigate the issues on appeal). Thus, it would be futile to permit Clemens to refile his NYLL and breach of contract claims in state court or any other forum. *Id.* The Court, however, need not decide here the precise contours of the preclusive effect of its summary judgment decision or the Second Circuit's decision dismissing Clemens' FMLA claim. To exercise supplemental jurisdiction, it is sufficient to observe what Clemens' own allegations and filings make obvious: that his NYLL and breach of contract claims arose and fell based on the same set of facts, and the same evidence, as his FMLA claim. *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 267 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115 (2d Cir. 2010) (exercising supplemental jurisdiction over NYCHRL claims following grant of summary judgment on all federal law claims because NYCHRL claims arose "from the same facts and rel[ied] on the same evidence as [plaintiff's] federal claims").

      **B.**    **Declining Supplemental Jurisdiction Would Undermine All Of The Values Articulated By The Second Circuit in *Catzin*.**

Looking at the other side of the coin also makes the case for exercising supplemental jurisdiction. If the Court were to decline to exercise supplemental jurisdiction, Clemens would presumably refile in state court the exact same claims he has litigated for years in federal court. Contrary to principles of comity, any subsequent state court proceeding would inevitably require a state court to wade into issues already decided by this Court and the Second Circuit. Not only that, but Moody's would incur the burden and expense of engaging in discovery and dispositive motion practice on the exact issues and claims decided in this action. In short, Moody's would

be forced to litigate the same case twice. That result would undermine the values of economy, convenience, fairness, and comity.

### III. CONCLUSION

For all the reasons stated above, Moody's respectfully submits that the Court properly exercised supplemental jurisdiction over Clemens' NYLL and breach of contract claims, and properly dismissed those claims, with prejudice.

Dated: July 8, 2019
      New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:   /s/ Jason D. Burns
     Kenneth J. Turnbull
     Jason D. Burns
     101 Park Avenue
     New York, New York 10178
     (212) 309-6000

*Attorneys for Defendant*