**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREGORY CLEMENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIV. ACTION NO. 17-004100-JPC |
| | ) |
| v. | ) |
| | ) **Electronically Filed** |
| MOODY'S ANALYTICS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT MOODY'S ANALYTICS, INC.'S**
**MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF THE COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION**

MORGAN, LEWIS & BOCKIUS LLP
Kenneth J. Turnbull
Jason D. Burns
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax:  (212) 309-6001

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 1

A.    Well-Settled New York Law Compelled The Dismissal of Clemens' NYLL Claim. ........................................................................................................................ 2

B.    Well-Settled New York Law Compelled The Dismissal of Clemens' Breach of Contract Claim. ........................................................................................................... 5

C.    Decisions by The Second Circuit Make Clear That Even if Clemens' Claims Were Novel, The Court Has The Discretion to Exercise Supplemental Jurisdiction. ................. 6

CONCLUSION ..................................................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barker v. NYNEX Corp.*
    305 A.D.2d 233 (1st Dep't 2003) ........................................................................ 5, 6

*Dean Witter Reynolds, Inc. v. Ross*
    75 A.D.2d 373 (1st Dep't 1980) ............................................................................. 4

*Foss v. Am. Tel. & Tel. Co*
    199 A.D.2d 668 (3d Dep't 1993) ......................................................................... 5, 7

*Friedman v. Arenson Office Furnishings Inc.*
    129 A.D.3d 525 (1st Dep't 2015).................................................................... 2, 3, 4

*Kavitz v. Int'l Bus. Machines, Corp.*
    458 F. App'x 18 (2d Cir. 2012)........................................................................... 5, 6

*Kolari v. New York-Presbyterian Hospital*
    455 F.3d 118 (2d Cir. 2006).................................................................................... 6

*Quirk v. Am. Mgmt. Sys., Inc.*
    No. 01-6813, 2002 WL 31654966 (S.D.N.Y. Nov. 22, 2002).................................. 4

*Rounseville v. Zahl*
    13 F.3d 625 (2d Cir. 1994)...................................................................................... 6

*Tischmann v. ITT/Sheraton Corp.*
    882 F. Supp. 1358 (S.D.N.Y. 1995)........................................................................ 4

*Truelove v Northeast Capital & Advisory*
    95 N.Y.2d 220 (2000) ..................................................................................... 2, 3, 4

*Valencia ex rel. Franco v. Lee*
    316 F.3d 299, (2d Cir. 2003).................................................................................... 6

## PRELIMINARY STATEMENT

Clemens' submission is notable not for what he argues, but for what he concedes. Clemens completely ignores the factors of judicial economy, fairness, convenience, and comity that weigh overwhelmingly in favor of this Court's exercise of supplemental jurisdiction over his duplicative state-law claims. It is easy to see why Clemens has retreated from the Second Circuit's controlling law. Re-litigating the same issues and facts already litigated and decided in this action would undermine, rather than promote, each of the values identified by the Second Circuit in *Catzin*. Faced with these inescapable truths, Clemens attempts to manufacture "novel" issues of state law where none exists. At no point prior to the dismissal of his Complaint, or at the Second Circuit, did Clemens suggest that his New York Labor Law ("NYLL") and breach of contract claims were anything other than routine. As Moody's has demonstrated in multiple briefs, and as this Court has already determined, well-established New York law dictates that Clemens' incentive compensation is not wages, and that his incentive compensation plan is not an enforceable contract. Clemens' newfound claim of novelty is nothing more than after-the-fact forum shopping.

Even if Clemens could show that his claims raised some novel issue of state law, the Court's exercise of supplemental jurisdiction was proper because the relevant factors of judicial economy, fairness, convenience, and comity weigh decidedly in Moody's favor. The Court should once again exercise supplemental jurisdiction to dismiss Clemens' NYLL and breach of contract claims, with prejudice.

## ARGUMENT

Effectively conceding that the *Catzin* factors all compel the exercise of supplemental jurisdiction, Clemens resorts to one argument. He argues—for the first time—that both his NYLL and his breach of contract claim are novel and, for that reason alone, that the Court abused its discretion by exercising supplemental jurisdiction. Clemens is wrong on all accounts.

A.      **Well-Settled New York Law Compelled The Dismissal of Clemens' NYLL Claim.**

Clemens seizes on a three-paragraph opinion, *Friedman v. Arenson Office Furnishings Inc.*, 129 A.D.3d 525 (1st Dep't 2015), to argue that his NYLL claim somehow raises a question of law previously unexplored by New York or federal courts.   In truth, *Friedman* does not break new legal ground.   This Court followed a well-travelled path when it held, consistent with *Friedman* and long-standing precedent, including the Court of Appeals' seminal decision in *Truelove v Northeast Capital & Advisory*, 95 N.Y.2d 220, 224 (2000) and its progeny, that Clemens' discretionary incentive compensation based on factors outside his own productivity and control is not wages.  *See* Dkt No. 43, at 17-18.

In *Friedman*, the "defendant hired plaintiff to start up, manage, and solicit business for a newly created division of its business." *Id*., 129 A.D.3d 525.  The "plaintiff's employment contract entitled her to yearly bonuses comprised of 15% of the Architectural Products division's net profits," and she brought a claim for unpaid wages under the NYLL when plaintiff's employer terminated her employment without paying her contractual bonus.  *Id.*.  In a two-sentence analysis, the First Department concluded that the plaintiff's "employment agreement create[d] "a direct relationship between [plaintiff's] own performance and the compensation to which [she] is entitled." *Id.*  (quoting *Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 224 (2000)).  The court reached that conclusion after observing that "[i]n the event that plaintiff can establish that her division earned net profits during the periods in question, payment of the bonuses would be non-discretionary and based upon services plaintiff rendered as the manager of a newly created division to be run by her . . . ." *Id.*

Clemens suggests that *Friedman* stands for the proposition that all discretionary pay is wages where there is some relationship between the bonus and the employee's own work. Dkt.

No. 54, at 3.   But *Friedman* does not sweep as broadly as Clemens would like, nor does it apply to the facts of this case.   Rather, in *Friedman* the court held that *non-discretionary* compensation may be considered wages when payment depends on factors directly controlled by the employee (there, the profitably of the division for which plaintiff was hired to "start up, manage, and solicit business").   *Friedman*, 129 A.D.3d 525.   That is, the overall profitability of plaintiff's division was a direct proxy for her efforts and performance.

Clemens' situation is much different.   As the Court has already held, Clemens had no vested right to receive any amount of discretionary incentive compensation, which Moody's had the right to adjust or eliminate altogether.   Dkt. No. 43, at 16.   Moreover, unlike the plaintiff in *Friedman*, Clemens was not personally responsible for the Stress Testing Team's overall sales, which reflected the pooled contributions of multiple employees.   *Id.*, at 17-18.   Each member of the Stress Testing Team, in turn, received a bonus from that pool.   This is precisely the type of arrangement that the Court of Appeals in *Truelove* held does not give rise to a claim for unpaid wages.   95 N.Y.2d at 224 (no claim for unpaid wages where bonus pool was dependent on factors outside of plaintiff's control and "plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer").   Contrary to Clemens' characterization, (Dkt. No. 54, at 2-3), there is nothing in the *Friedman* decision that even addresses whether the "efforts of others" impacted the plaintiff's bonus and, unlike here, there is no indication that any employee other than Friedman received a bonus from the revenue generated by her division.   *Friedman*, 129 A.D.3d 525.

In sum, the law applicable to Clemens' NYLL claim is well settled and nothing in the *Friedman* decision calls into question the straightforward rule announced by the New York Court of Appeals in *Truelove* (which the *Friedman* decision cites) that:

3

> [T]he more restrictive statutory definition of "wages," as "earnings . . . for labor or services rendered," **excludes incentive compensation "based on factors falling outside the scope of the employee's actual work."** . . . In our view, the wording of the statute, in expressly linking earnings to an employee's labor or services personally rendered, contemplates a more direct relationship between an employee's own performance and the compensation to which that employee is entitled.

*Truelove*, 95 N.Y.2d at 224 (emphasis added) (quoting *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1370 (S.D.N.Y. 1995)).  That the Court of Appeals expressly relied on *this Court's* decision in *Tischmann* to hold that the NYLL's definition of wages excludes incentive compensation "based on factors falling outside the scope of the employee's actual work" further confirms that New York's federal and state courts are completely aligned on this issue.  This lockstep approach explains why federal courts have routinely dismissed NYLL claims precisely like the one raised here by Clemens.  *See, e.g.*, *Tischmann*, 882 F. Supp. at 1370; *Quirk v. Am. Mgmt. Sys., Inc.*, No. 01-6813, 2002 WL 31654966, at *2 (S.D.N.Y. Nov. 22, 2002) (holding that the term "wages" as used in the NYLL "*does not encompass an incentive compensation plan*") (quoting *Dean Witter Reynolds, Inc. v. Ross*, 75 A.D.2d 373, 381 (1st Dep't 1980)) (emphasis in original).

In fact, the general rule that the NYLL's definition of wages does not encompass incentive compensation plans predates both the decision in *Truelove* and this Court's decision in *Tischmann*. Nearly forty years ago in *Dean Witter*, the First Department rejected a NYLL claim where, as here, commissions paid under an incentive compensation plan were subject to the employer's review and adjustment.  *Id.* at 381 ("The term 'wages,' despite its broad definition . . . does not encompass an incentive compensation plan.").

**B.     Well-Settled New York Law Compelled The Dismissal of Clemens' Breach of Contract Claim.**

Without citing a single decision, Clemens states that "New York law remains unsettled with respect to the legal effect of an employer's reservation of the right to adjust the incentives and objectives of a plan or terminate the plan." Dkt. No. 54, at 3.   This is not so.  Over a decade ago in *Barker v. NYNEX Corp.*, the First Department held that an incentive compensation plan did not constitute a contract for the payment of any particular sum where the plan reserved the employer's "right to reduce, modify, or withhold incentive payments at any time based on changed business conditions, individual performance or management modification." 305 A.D.2d 233, 234 (1st Dep't 2003) (quotation omitted).  Ten years before *Barker*, the Third Department in *Foss v. Am. Tel. & Tel. Co.* similarly held that that an incentive compensation plan did not "confer[ ] upon [plaintiff] any right to receive" a specific commission amount because the plan contained a "disclaimer explicitly reserv[ing] to [the employer] the right to 'reduce, modify, or withhold compensation . . . based on management determination of special circumstances at any time for any reason with or without prior notice.'" 199 A.D.2d 668, 668-69 (3d Dep't 1993).

Clemens points out that the Court's summary judgment decision did not specifically cite *Barker*, *Foss*, or other decisions by New York state courts holding that disclaimers such as those in *Barker* and *Foss* render an incentive compensation plan unenforceable.  Dkt. No. 54, at 4. Maybe so, but that is beside the point.  What does matter is that New York courts have long-settled this issue and that this Court correctly applied the same principles set forth in *Barker* and *Foss* to dismiss Clemens' claim.   While it is true that the Court relied on the Second Circuit's decision in *Kavitz v. Int'l Bus. Machines, Corp.*, 458 F. App'x 18, 20 (2d Cir. 2012), in holding that Clemens' incentive compensation plan is not an enforceable contract, (Dkt. No. 43, at 16), Clemens fails to mention that *Kavitz* expressly relied on *Barker*.  On this point, the Second Circuit emphatically

applied the correct standard under New York law: "[T]hat IBM retained unfettered discretion under the Plan to adjust its terms or even to cancel the Plan entirely confirms that the document is not an enforceable contract." *Kavitz*, 458 F. App'x at 20 (citing *Barker*, 305 A.D.2d. 233).

### C. Decisions by The Second Circuit Make Clear That Even if Clemens' Claims Were Novel, The Court Has The Discretion to Exercise Supplemental Jurisdiction.

Even if the Court were to find some element of novelty here, that would not be, as Clemens' contends, grounds to disregard the values of economy, convenience, fairness, and comity that each support the Court's decision to dismiss Clemens' state-law claims on summary judgement. The two cases cited by Clemens do not support his position. In *Kolari v. New York-Presbyterian Hospital*, in sharp contrast to this case, "Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources . . . ." 455 F.3d 118, 123-24 (2d Cir. 2006) (citing *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (collecting cases affirming the exercise of supplemental jurisdiction when cases are trial ready at the time federal claims are dismissed). Here, in contrast, the Court dismissed Clemens' overlapping, federal claim under the Family Medical Leave Act ("FMLA") only after the completion of extensive discovery and full briefing on the merits of Clemens' state-law claims by the parties.

The reasoning underpinning the decision in *Rounseville v. Zahl* likewise *supports* the Court's exercise of supplemental jurisdiction to dismiss Clemens' state-law claims because doing so meant disposing of his Complaint in its entirety. 13 F.3d 625, 631 (2d Cir. 1994) (recognizing that "the District Court may have acted within its discretion by entertaining a summary judgment motion that offered some prospect of ending the litigation entirely").

Clemens does not, because he cannot, dispute that all of the factors identified by the Second Circuit to assess the proper exercise of supplemental jurisdiction—judicial economy, convenience,

fairness and comity— favor the Court's exercise of supplemental jurisdiction in this case. Clemens' FMLA and state-law claims hinge on the same theory and the same issue that this Court and the Second Circuit have already decided Moody's favor following extensive discovery and multiple rounds of briefing.  Forcing the parties to re-litigate these same claims and issues for a second time serves neither economy, convenience, fairness, nor comity.  Clemens has had ample opportunity to pursue his claims.  The time has come for this action to finally end.

## <u>CONCLUSION</u>

For all the reasons stated above and in its moving brief, Moody's respectfully submits that the Court properly exercised supplemental jurisdiction over Clemens' NYLL and breach of contract claims by dismissing those claims with prejudice.   The Court should do so again here.


Dated: July 22, 2019                                    Respectfully submitted,
      New York, New York
                                                   MORGAN, LEWIS & BOCKIUS LLP

                                                   By:  __/s/ Jason D. Burns_____
                                                      Kenneth J. Turnbull
                                                      Jason D. Burns
                                                      101 Park Avenue
                                                      New York, New York 10178
                                                      (212) 309-6000

                                                      *Attorneys for Defendant*